**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
JUDICIAL WATCH, INC.,         )
                              )
        Plaintiff,            )
                              )
    v.                        )   Civil Action No. 11-606(GK)
                              )
U.S. DEPARTMENT OF HOMELAND   )
SECURITY,                     )
                              )
        Defendant.            )
_____)
```

### MEMORANDUM OPINION

Plaintiff, Judicial Watch, Inc., brings this action against Defendant, the Department of Homeland Security ("DHS"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff seeks material related to certain types of suspensions of deportation proceedings. This matter is before the Court on Defendant's Motion for Summary Judgment [Dkt. No. 19] and Plaintiff's Cross-Motion for Summary Judgment [Dkt. No. 20]. Upon consideration of the Motions, Oppositions, and Replies, and the entire record herein, and for the reasons set forth below, Defendant's Motion for Summary Judgment is **granted** and Plaintiff's Cross-Motion for Summary Judgment is **denied.**

**I.   BACKGROUND**[1]

Judicial Watch is a non-profit, educational foundation seeking to promote "integrity, transparency, and accountability in government." Compl. ¶ 3 [Dkt. No. 1]. This case concerns Judicial Watch's efforts to obtain records of communications between DHS and other governmental and non-governmental entities regarding certain procedures used by the government for suspending deportation proceedings. On July 2, 2010, Judicial Watch submitted a FOIA request seeking records of both communications within DHS and communications between DHS and the White House, Executive office of the President, and any third parties concerning policies for "deferred action," "parole," and "selective reprieve." Judicial Watch sought records from January 1, 2010, to the "present." Subsequently, Judicial Watch narrowed its request by substituting a list of private organizations in place of "any third parties" and specified the components within DHS that it wanted searched.

In response to the FOIA request, DHS searched the components identified by Judicial Watch. Further, Immigration and Customs Enforcement ("ICE"), a component of DHS, searched its own components most likely to have responsive records. Eventually, DHS produced 4,235 pages, from both its own components and from ICE's, and withheld certain records in part or in full pursuant to

---

[1] Unless otherwise noted, the facts set forth herein are undisputed and drawn from the parties' Statements of Undisputed Material Facts submitted pursuant to Local Civil Rule 7(h).

Exemptions 5, 6, 7(C), and 7(E). Judicial Watch now challenges DHS's refusal to release, in part or in full, twenty documents totaling approximately eighty-seven pages. Pl.'s Cross-Mot. 3 n.1.

On December 8, 2011, DHS filed its Motion for Summary Judgment. On January 5, 2012, Judicial Watch filed its Opposition and Cross-Motion for Summary Judgment. On January 26, 2012, DHS filed its combined Opposition and Reply [Dkt. No. 22]. On February 2, 2012, Judicial Watch filed its Reply [Dkt. No. 24].

**II.   STANDARD OF REVIEW**

The purpose of FOIA is to "'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" Morley v. CIA, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976)). FOIA "requires agencies to comply with requests to make their records available to the public, unless the requested records fall within one or more of nine categories of exempt material." Oglesby v. U.S. Dep't of Army, 79 F.3d 1172, 1176 (D.C. Cir. 1996) (citing 5 U.S.C. § 552(a), (b)). An agency that withholds information pursuant to a FOIA exemption bears the burden of justifying its decision, Petroleum Info. Corp. v. Dep't of the Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)), and must submit an index of all materials withheld, referred to as a "Vaughn Index." Vaughn v. Rosen, 484 F.2d 820, 827-28 (D.C. Cir. 1973). In determining whether an agency has

properly withheld requested documents under a FOIA exemption, the district court conducts a <u>de novo</u> review of the agency's decision. 5 U.S.C. § 552(a)(4)(B).

FOIA cases are typically and appropriately decided on motions for summary judgment. <u>Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.</u>, 762 F. Supp. 2d 123, 130 (D.D.C. 2011); <u>Defenders of Wildlife v. U.S. Border Patrol</u>, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Summary judgment will be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c).

In a FOIA case, the court may award summary judgment solely on the basis of information provided in affidavits or declarations when they (1) "describe the documents and the justifications for nondisclosure with reasonably specific detail;" (2) "demonstrate that the information withheld logically falls within the claimed exemption;" and (3) "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other

documents.'" SafeCard Servs., Inc. v. Sec. & Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

**III. ANALYSIS**

As noted above, only twenty documents remain in dispute. Judicial Watch objects to the withholding of these documents on two grounds. First, it argues that DHS's withholding of certain material under Exemption 5 was improper. Second, it contends that DHS failed to disclose all reasonably segregable, nonexempt portions of records otherwise appropriately withheld. Each claim will be addressed in turn.

**A.   Exemption 5**

Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 "is interpreted to encompass, inter alia, three evidentiary privileges: the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege." Tax Analysts v. IRS, 294 F.3d 71, 76 (D.C. Cir. 2002).

The relevant privilege here, the deliberative process privilege, "'covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" Dep't

of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975)); see also Public Citizen, Inc. v. Office of Mgmt. & Budget, 598 F.3d 865, 874-75 (D.C. Cir. 2010). Because "advice and information would not flow freely within an agency if such consultative information were open to public scrutiny," Exemption 5 "allows agency staffers to provide decisionmakers with candid advice without fear of public scrutiny[,] . . . helps to prevent premature disclosure of proposed policies[,] and protects against public confusion through the disclosure of documents suggesting reasons for policy decisions that were ultimately not taken." Judicial Watch, Inc. v. U.S. Postal Serv., 297 F. Supp. 2d 252, 258-59 (D.D.C. 2004).

To invoke the deliberative process privilege, an agency must show that the requested material meets two requirements: it must be "both 'predecisional' and 'deliberative.'" Public Citizen, 598 F.3d at 874 (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980)); see also In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997). Material is "predecisional if 'it was generated before the adoption of an agency policy.'" Judicial Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 151 (D.C. Cir. 2006) (quoting Coastal States, 617 F.2d at 866). Accordingly, a "court must first be able to pinpoint an agency decision or policy to which these documents contributed." Morley, 508 F.3d at 1127.

Material is deliberative if "it reflects the give-and-take of the consultative process." Judicial Watch, 449 F.3d at 151 (internal quotation omitted). Deliberative materials "'reflect[ ] advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated, [or] the personal opinions of the writer prior to the agency's adoptions of a policy.'" Public Citizen, 598 F.3d at 875 (quoting Taxation With Representation Fund v. IRS, 646 F.2d 666, 677 (D.C. Cir. 1981) (alterations in Public Citizen)). Hence, the privilege covers information that "reflect[s] the personal opinions of the writer rather than the policy of the agency." Morley, 508 F.3d at 1127 (internal quotation omitted). But when the information at issue is "[f]actual material that does not reveal the deliberative process," it is not protected. Id. (quoting Paisley v. CIA, 712 F.2d 686, 698 (D.C. Cir. 1983)).

In order to withhold a document under the deliberative process privilege, the agency must make the additional showing that disclosure would cause injury to the decisionmaking process. Army Times Publ'g Co. v. Dep't of the Air Force, 998 F.2d 1067, 1071 (D.C. Cir. 1993); Judicial Watch, 297 F. Supp. 2d at 259. Therefore, "the agency must 'show, by specific and detailed proof that disclosure would defeat, rather than further, the purposes of FOIA.'" Hall v. U.S. Dep't of Justice, 552 F. Supp. 2d 23, 29

(D.D.C. 2008) (quoting Mead Data Cent. Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 258 (D.C. Cir. 1977)).

DHS offers the Declarations of James Holzer [Dkt. No. 19-1], the Director for Disclosure and FOIA Operations in the DHS Privacy Office, and Catrina Pavlik-Keenan [Dkt. No. 19-3], the FOIA Officer at ICE's FOIA Office, to explain its decisions to withhold documents. Each Declaration is supported by a Vaughn Index ("Holzer Index" [Dkt. No. 19-2] and "Pavlik-Keenan Index" [Dkt. No. 19-4]), setting out in greater detail the reason for withholding each document.

Simply put, the Declarations and attached Vaughn Indices for each of the twenty documents in dispute clearly and specifically explain the reasons that that document is predecisional and deliberative and why disclosure would harm the decision-making process. Public Citizen, 598 F.3d at 874; Morley, 508 F.3d at 1127; Army Times Publ'g Co., 998 F.2d at 1071. The two Vaughn Indices explain with reasonable detail the agency decision or policy to which the documents contributed and the reason the documents are properly considered deliberative. Given the presumption of good faith to be accorded these submissions, nothing more is required of DHS. SafeCard Servs., 926 F.2d at 1200; Military Audit Project, 656 F.2d at 738.

Indeed, Judicial Watch only makes specific challenges to the withholding of eight documents.[2] Pl.'s Cross-Mot. 7-8. Citing to two cases from the District Court for the Southern District of New York, Judicial Watch argues that six of these documents ("DHS 1," "DHS 2," "DHS 4," "DHS 5," "DHS 6," and "DHS 7") are not covered by Exemption 5 because they concern public relations. In Judicial Watch's view, "[d]eliberations about how to present an already decided policy to the public, or documents designed to explain that policy to -- or obscure it from the -- public, including documents in draft form, are at the heart of what should be released under the FOIA." Pl.'s Cross-Mot. 7.

In this District, however, courts have routinely found that drafts and discussions relating to how to respond to press inquiries are covered by the deliberative process privilege. See, e.g., Judicial Watch, Inc. v. U.S. Dep't of Treasury, 796 F. Supp. 2d 13, 31 (D.D.C. 2011); Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec., 736 F. Supp. 2d 202, 208 (D.D.C. 2010). Even if the documents are created after the underlying policy they discuss is finalized, "these documents are generated as part of a continuous

---

[2] Judicial Watch also makes the general complaint that "[g]iven the sparse descriptions of the disputed documents that Defendant has provided Plaintiff with thus far, . . . it is difficult in many cases for Plaintiff to determine if the withheld material is in fact both predecisional and deliberative." Pl.'s Cross-Mot. 7. To the contrary, as noted above, the Declarations and Vaughn Indices explain clearly and specifically the bases for finding the documents in question predecisional and deliberative.

process of agency decision making, viz., how to respond to on-going inquiries." Judicial Watch, 736 F. Supp. 2d at 208.

Further, the fear of public scrutiny may affect an agency's consideration of whether to provide a statement to a television news program just as it may affect consideration of the underlying substantive policy. See James Madison Project v. CIA, 607 F. Supp. 2d 109, 128 (D.D.C. 2009) ("The critical factor in determining whether the material is deliberative in nature 'is whether disclosure of the information would discourage candid discussion within the agency.'" (quoting Access Reports v. Dep't of Justice, 926 F.2d 1192, 1194 (D.C. Cir. 1991))). The documents at issue here, including drafts and communications relating to press inquiries, are predecisional to the agency's determination of how to present its policy in the press. Judicial Watch, 736 F. Supp. 2d at 208. Judicial Watch has offered no basis for departing from the rule governing deliberative process privilege. See, e.g., Public Citizen, 598 F.3d at 875.

As to the final two documents ("ICE 4" and "ICE 6"), Judicial Watch argues that they should be disclosed because they "appear to be merely lists of questions or primarily factual material." Pl.'s Cross-Mot. 8. First, Judicial Watch simply ignores applicable case law in this District that draft questions prepared for a presentation are protected by the deliberative process privilege. See Citizens for Responsibility and Ethics in Washington v. U.S.

Dep't of Labor, 478 F. Supp. 2d 77, 84-85 (D.D.C. 2007) (finding that the deliberative process privilege applies to a list of "questions/issues" prepared for a phone call). Second, Judicial Watch is wrong when it states that the records "appear to be . . . primarily factual material." Id. The Vaughn Index clearly states that one record contains draft questions for use in a presentation and the other contains draft language and edits for a memorandum.

In sum, DHS has satisfied its burden of demonstrating that the withheld records are predecisional and deliberative and that disclosure would harm the deliberative process. Public Citizen, 598 F.3d at 874; Army Times Publ'g Co., 998 F.2d at 1071. Therefore, the records covered by the deliberative process privilege are properly withheld under Exemption 5. Klamath Water Users Protective Ass'n, 532 U.S. at 8-9; Morley, 508 F.3d at 1126-27.

**B. Segregability**

Even if a record contains information that is exempt from disclosure, any reasonably segregable information within that record must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); Trans-Pac. Policing Agreement v. United States Customs Serv., 177 F.3d 1022, 1026-27 (D.C. Cir. 1999). Critically, "[i]n order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability." Johnson v.

Exec. Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting Mead Data Cent., Inc. v. United States Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977)). A "blanket declaration" that documents do not contain segregable material is insufficient. Wilderness Soc. v. United States Dep't of Interior, 344 F. Supp. 2d 1, 19 (D.D.C. 2004).

Judicial Watch argues that "Defendant's justification for these withholdings is quite sparse," observing that ten of the documents in dispute were withheld in their entirety and nine were largely redacted. Pl.'s Cross-Mot. 5. DHS responds that "the segregability declarations coupled with the detailed descriptions of the withheld information suffice to carry DHS's burden." Def.'s Reply 8.

The two Declarations and accompanying Vaughn Indices make clear with ample specificity that all reasonable segregable material has been released. Both Declarations indicate that all withheld documents were reviewed line-by-line to identify reasonably segregable material. Holzer Decl. ¶ 20; Pavlik-Keenan Decl. ¶ 39. Additionally, the attached Vaughn Indices demonstrate DHS and ICE's efforts to separate the segregable information identified in each withheld or redacted record.

Two examples will suffice. The "justification/description" for "DHS 3," which was partially withheld, reads: "The redacted portion of this page consists of an email discussing a proposed change to

agency policy for certain Haitian Orphans. . . . The entire redacted portion consists of the author's description of a policy change that was under consideration at the time of his e-mail." Holzer Index at Doc. 3. The "justification/description" for DHS 4, which was also partially withheld, provides even greater detail. It goes through the record page-by-page, stating, in part:

> The bottom of Page 16 and the top of Page 17 consist of agency personnel providing their comments on this draft statement. Taking into account the comments, Matthew Chandler revised the draft statement and recirculated [it] in the e-mail set forth on the bottom of Page 15 and the top of page 16. Also included on these pages are the e-mail headers indicating precise times that e-mails were sent with comments, and by whom. . . . After a line-by-line review, there is no reasonably segregable non-exempt material in pages 16-19.

Id. at Doc. 4.

Our Court of Appeals has approved precisely the sort of specific and informative language contained in these Declarations and Vaughn Indices. Johnson, 310 F.3d at 776. Here, as in Johnson, "[t]he combination of the Vaughn ind[ices] and the affidavits . . . are sufficient to fulfill the agency's obligation to show with 'reasonable specificity' why a document cannot be further segregated." Id. (citing Armstrong v. Exec. Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996)).

**IV. CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment is **granted** and Plaintiff's Motion for Summary Judgment is **denied.** An Order shall accompany this Memorandum Opinion.


July 30, 2012                               /s/
                                  Gladys Kessler
                                  United States District Judge